

**SIGNED this 29 day of March, 2007.**

_____
**R. Thomas Stinnett
UNITED STATES BANKRUPTCY JUDGE**

_____

**UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION**

| | |
|---|---|
| In re: | No.  06-10655 |
| | Chapter 13 |
| KIRK DOUGLAS JACKSON, | |
| Debtor(s). | |

Appearances:    Thomas L. N. Knight, Chattanooga, Tennessee, on behalf of Larry Bryant Motors, Inc.

Robert J. Harriss, Rossville, Georgia, on behalf of Kirk Douglas Jackson, Debtor

R. Thomas Stinnett, United States Bankruptcy Judge

**MEMORANDUM**

The debtor proposed a chapter 13 plan treating Bryant Title Pawn as a creditor with a security interest in the debtor's car. The court confirmed the plan without any objection from Bryant Title. A few months later Larry Bryant Motors filed a motion to reconsider confirmation. The

debtor has not questioned the standing of Larry Bryant Motors to assert the rights of Bryant Title. For convenience, the court will refer to both as Bryant Title.

Bryant Title's motion to reconsider asserts that: (1) Bryant Title was the owner of the car when the debtor filed this chapter 13 case, and the debtor had no interest in it; (2) the constitution did not allow the chapter 13 plan or the confirmation order to take away any part of Bryant Title's interest in the car and give it back to the debtor.

The basis of the motion is relevant to the preliminary question of whether the motion should be denied because it was filed long after the deadline for filing a motion to reconsider. A motion to reconsider an order usually comes under Rule 59 and must be filed within ten days after entry of the order. Fed. R. Bankr. P. 9023; Fed. R. Civ. P. 59. Bryant Title filed the motion to reconsider long after entry of the order confirming the plan. Despite the motion's title, however, it is not a motion to reconsider under Rule 59. The motion asks the court to declare that the confirmation order is void as to Bryant Title on constitutional grounds. This kind of motion comes under Rule 60(b)(4); it allows the court to grant relief from an order on the ground that it is void. Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(b)(4).

The conclusion that the motion comes under Rule 60(b)(4) is also obvious from Bryant Title's reliance on the *Ruehle* decision. *Ruehle v. Educational Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d 679 (6th Cir. 2005). *Ruehle* dealt with a confirmed plan that provided for partial payment of a student loan debt and discharge of the balance. The creditor's failure to object to confirmation apparently resulted in discharge of the balance of the student loan debt. The court of appeals disagreed. The plan was intended to force the creditor to raise the discharge question as part of the confirmation process or lose the question. The court held that this procedure violated due process. Bryant Title's argument obviously parallels the creditor's argument in *Ruehle*.

Since Bryant Title's motion comes under Rule 60(b)(4), the ten day deadline of Rule 59 does not apply. The rules do not set a fixed deadline for filing a motion under Rule 60(b)(4). The motion can be filed within a reasonable time. Fed. R. Bankr. P. 9024; Fed. R. Civ. P. 60(b). The evidence does not show that Bryant Title's motion was filed beyond a reasonable time.

2

The debtor argues there was no violation of Bryant Title's right to due process because the issue of Bryant Title's interest in the car was the type of issue that would normally be raised and decided as part of the confirmation process. The debtor obtained a loan from Bryant Title by pawning the title certificate to a Ford car. Bryant Title contends the debtor forfeited all his interest in the car before he filed this bankruptcy case because he failed to redeem the car within the time allowed by the pawn contract. The debtor contends that various legal problems with the pawn transaction prevented strict enforcement of the contract and justified treating Bryant Title as a secured creditor. The court will consider whether these arguments have merit because the answer is relevant to the due process question.

The pawn transaction took place in Georgia, and the parties both rely on Georgia law. A pawn transaction must strictly follow the requirements set out in the Georgia statutes. *Johnson v. Speedee Cash of Columbus, Inc. (In re Johnson)*, 289 B.R. 251 (Bankr. M. D. Ga. 2002). The debtor contends the pawn contract does not meet the statutory requirements. The first argument deals with the automatic extension of the statutory grace period if the pawnbroker is closed on the last day.

A pawn contract must set a redemption period of 30 days. Ga. Code Ann. § 44-12-131(a)(1). If the person who pawned the property – the pawnor – does not redeem or renew within that time, he still has a statutory grace period during which he can redeem the property. The grace period is generally 10 days, but it is 30 days for the pawn of a motor vehicle or a certificate of title to a motor vehicle. If the pawnbroker is closed on the last day of the grace period, the statute provides an automatic extension through the next day that the pawnbroker is open for business. Ga. Code Ann. § 44-14-403((b)(1). The grace period must be disclosed to the pawnor. Ga. Code Ann. § 44-12-138(b)(10).

The pawn contract between the debtor and Bryant Title gives notice of the 10 day grace period and in the next sentence explains the automatic extension when the pawnbroker is closed on the last day. A separate section at the end of the contract has the heading, "THE FOLLOWING INFORMATION APPLIES ONLY TO PAWN TRANSACTIONS INVOLVING MOTOR VEHICLES CERTIFICATE OF TITLE." Near the end of this section is the statement, "This pawn transaction has a grace period of 30 calendar days when pawning a motor vehicle." The contract does not repeat after this

3

sentence the statement that the grace period is automatically extended if the pawnbroker is closed on the last day. The debtor argues that this omission prevents the contract from meeting the statutory requirements.

The section of the contract dealing with motor vehicles and title certificates modifies the general rules stated in earlier sections. An unmodified general rule still applies to the pawn of a motor vehicle or title certificate. In the general rules, the automatic extension or the grace period is stated as follows: "In the event the last day of the grace period falls on a day in which the pawn broker is not open for business, the grace period shall be extended through the first day following upon which the pawnbroker is open for business." The wording of this sentence can apply to a grace period of 10 days or 30 days. The sentence establishes a general rule and is not modified by the section dealing with motor vehicles and title certificates. As a result, it still applies to the pawn of a motor vehicle or title certificate. Thus, the contract provides that the grace period of 30 days for a motor vehicle or title certificate is automatically extended if the pawnbroker is closed on the last day. The contract did not need to repeat the extension sentence in the section setting out special rules for motor vehicles and title certificates.

The debtor has not relied on another problem with the statement of the 30 day grace period. The contract provides that the grace period is 30 days "when pawning a motor vehicle." The 30 day grace period also applies to pawning a certificate of title. The statutes make pawning the certificate of title equivalent to pawning the motor vehicle itself, but a person pawning a certificate of title would not necessarily expect exactly the same rules for both. The pawnor might not be surprised by different rules for pawned motor vehicles and pawned title certificates. A pawn contract could deal with this problem by defining motor vehicle to include a certificate of title, but the debtor's contract with Bryant Title does not do that. Thus, the contract suggested that the 30 day grace period did not apply to the debtor's pawn of the certificate of title, and the debtor had only a 10 day grace period. This does not conform to the statutory requirements.

The courts have not explained the effect on a pawn contract when it fails to meet the statutory requirements. In one case, the contract understated the interest rate, but the interest rate did

4

not exceed the maximum allowed by statute. The court held that the error did not make the pawn contract void. The court reasoned that since a statute would have made the pawn contract void if the interest and other charges actually exceeded the statutory maximum, then the mistake in stating the interest rate was not sufficient to make the contract void. *Hooks v. Cobb Center Pawn & Jewelry Brokers, Inc.*, 241 Ga.App. 305, 527 S.E.2d 566 (1999); Ga.Code Ann. § 44-12-131(b).

The facts of *Johnson v. Speedee Cash* are more like the facts in this case. *Johnson v. Speedee Cash of Columbus, Inc. (In re Johnson)*, 289 B.R. 251 (Bankr. M. D. Ga. 2002). The pawnbroker argued that Johnson had forfeited all his interest in a car by failing to redeem the pawned title certificate within the grace period. The contract provided only a 10 day grace period instead of the 30 day grace period required by statute. The error in stating the grace period called into question the pawnbroker's right to prove or enforce a forfeiture of the debtor's rights. The court denied the pawnbroker's motion for summary judgment because the court could not hold that the law entitled the pawnbroker to judgment in its favor. The court's reasoning implies that when a pawn contract sets an unlawfully short grace period, one remedy for the debtor is denying or limiting the effect of the debtor's failure to redeem within the grace period. The debtor's contract with Bryant Title raises the same issue. Since the parties have not argued this point, however, the court will not render a decision on the effect of the apparent error. Suffice it to say that the apparent error was another ground for arguing that the pawn contract was not enforceable as written.

The debtor has another complaint about the transaction with Bryant Title. The statutes set the length of a pawn transaction at 30 days, meaning the contract can allow the pawnor only 30 days to redeem the property. Ga.Code Ann. § 44-12-131(a)(1). The pawnbroker and the pawnor can extend the contract in 30 day increments. In the first ninety days of the contract, the pawnbroker can collect a pawn charge up to 25% of the amount financed for each 30 day period. For the third extension of the contract (from day 91 through day 120), and for any later extension, the pawnbroker can collect up to 12.5% of the amount financed for each 30 day period. Ga.Code Ann. § 44-12-131(a)(4).

The debtor executed the pawn contract on October 22, 2005. At the hearing on Bryant

5

Title's motion, the debtor's attorney conceded that the debtor could prove only one extension, from November 21 through December 21, 2005. When the debtor obtained that extension, he signed a new pawn contract. The new pawn contract stated a charge of 25% of the amount financed for two 30 day extensions. The second extension under the new pawn contract would have been the third extension of the first pawn contract, and Bryant Title would have been limited to a 12.5% charge under the first pawn contract instead of the 25% charge stated in the new contract. The debtor contends the new pawn contract violated the statutes by providing for the 25% charge instead of a 12.5% charge.

The debtor may be correct. The second pawn contract may be void because it violated the statutes. Ga.Code Ann. §§ 44-14-403(b)(2), (4) & § 44-12-131(a)(4). This raises two questions. Was the entire transaction, including the original pawn contract rendered void? What is the effect of making a pawn contract void?

Section 44-12-131(b) provides:

> (b) Any interest, charge, or fees contracted for or received, directly or indirectly, in excess of the amounts permitted under subsection (a) of this Code section shall be uncollectable and the pawn transaction shall be void. All interest and the pawnshop charge allowed under subsection (a) of this Code section shall be deemed earned, due, and owing as of the date of the pawn transaction and a like sum shall be deemed earned, due, and owing on the same day of the succeeding month.

Ga. Code Ann. § 44-12-131(b). This statute does not say the particular pawn contract will be void. It says the pawn transaction will be void. "Pawn transaction is defined in the preceding section:

> "Pawn transaction" means any loan on the security of pledged goods or any purchase of pledged goods on the condition that the pledged goods may be redeemed or repurchased by the pledgor or seller for a fixed price within a fixed period of time.

Ga. Code Ann. § 44-12-130(3). The two statutes seem to mean that the entire pawn transaction is void if the pawnbroker receives or even "contracts for" excess charges at any time before the pawn ends. Thus, the second pawn contract could have rendered the transaction void. That conclusion brings the court to the other question. What does it mean for a pawn transaction to be void?

6

Section 44-12-131(b) says the transaction is void but then says there is a debt due and owing. This could mean that voidness reverses two of the primary elements of the pawn: (1) voidness makes the pawnor personally liable to the pawnbroker; (2) voidness deprives the pawnbroker of any interest in the pawned property, even a lien to secure the debt. On the other hand, voidness could mean that the pawnbroker's interest is limited to a lien for collection of the debt, and the pawnor either is or is not personally liable to the pawnbroker.[1] Voidness could also affect the pawnbroker's right to the pawn charge. The debtor's chapter 13 plan reflects a decision to treat the pawn transaction as giving Bryant Title a lien on the car limited to securing the debt. (Bryant Title had its interest noted on the certificate of title.) Since the plan has been confirmed, the court is not concerned with whether the plan should have treated the pawn transaction better or worse on the ground that voidness under Georgia law would have caused a different result.

In summary, the pawn transaction suffered from obvious questions as to whether it complied with the pawn statutes. The debtor had good legal arguments that his interest in the car had not been forfeited and that the transaction could be treated as something other than a completed pawn transaction. The question is whether treating the plan as a final decision on these arguments would violate Bryant Title's right to due process.

Most issues relevant to confirmation of a chapter 13 plan can be incorporated into the confirmation process and are decided by confirmation. 11 U.S.C. § 1327(a); 3 Keith M. Lundin, *Chapter 13 Bankruptcy* § 229.1 (3rd ed. 2006). To provide due process, however, some issues require a separate procedure that explicitly and emphatically raises the issue – a procedure that is more likely to alert the creditor that the issue has been raised and will be decided by the bankruptcy court. The Sixth Circuit's decision in *Ruehle* illustrates the rule. *Ruehle v. Educational Credit Mgmt. Corp. (In re Ruehle)*, 412 F.3d

---

[1] The definition of pawn transaction refers to "pledged" property but describes a transaction fundamentally different from an ordinary pledge to secure a debt. The definition of "pledged goods" leaves no doubt that the statute uses "pledged" to mean delivery of possession to a pawnbroker in a pawn transaction. Ga. Code Ann. § 44-12-130(5). The definition does not require the court to treat a void pawn transaction as something other than an ordinary pledge to secure a debt.

679 (6th Cir. 2005).

*Ruehle* involved discharge of a student loan debt. The court can order discharge of a student loan debt to the extent that requiring payment would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8) & 1328(a)(2) (2004). If the debtor wants the bankruptcy court to decide this question, the rules of procedure require the debtor to file a complaint, which commences a separate adversary proceeding. Fed. R. Bankr. P. 4007 & 7001. In *Ruehle* the chapter 13 plan provided for payment of a small portion of the student loan debt and discharge of the balance after completion of the plan. To accomplish the discharge, the plan provided that confirmation would amount to a decision that repayment of the balance would impose an undue hardship. The court confirmed the plan without an objection by the student loan creditor. After the debtor completed the plan and received a discharge, the creditor's assignee attempted to collect the unpaid balance. The debtor contended the debt had been discharged. The Sixth Circuit held that the confirmed plan did not discharge the debt; incorporating the dischargeability question into the plan confirmation process violated the creditor's right to due process.

Lack of due process generally is not a valid ground for attacking an order entered in a contested matter that began with a motion or objection, even though the rules required a complaint and adversary proceeding, if the other party not only failed to object to the procedure but also appeared and litigated the issues. In that situation, the procedural differences between a contested matter and an adversary proceeding generally do not make a difference to due process. *Tully Construction Co. v. Cannonsburg Environmental Associates, Ltd. (In re Cannonsburg Environmental Associates, Ltd.)*, 72 F.3d 1260 (6th Cir. 1996); *Fleet National Bank v. Valente (In re Valente)*, 360 F.3d 256 (1st Cir. 2004); *In re Beta Intern., Inc.*, 210 B.R. 279 (E. D. Mich. 1996).

At the beginning of a proceeding, however, due process requires adequate notice to the other party of the disputes the proceeding is expected to decide. The adequacy of the notice depends partly on the other party's reasonable expectations as to the procedure required by the rules for litigating the dispute. *Doolittle v. County of Santa Cruz (In re Metzger)*, 346 B.R. 806 (Bankr. N. D. Calif. 2006);

*In re Bryant*, 323 B.R. 635 (Bankr. E. D. Pa. 2005); *Carroll v. Rafael Galleries, Inc. (In re Altman)*, 254 B.R. 509 (D. Conn. 2000). The student loan creditor in *Ruehle* was entitled to expect the dischargeability dispute would *not* be decided in the confirmation process. Litigation of the dispute required the heightened degree of notice that would have resulted from filing a complaint. *In re Hanson, 397 F.3d 482 (7th Cir. 2005)*. Notice of the proposed chapter 13 plan and the time to object could not have been sufficient notice to require the creditor to respond and litigate the dischargeability question as part of the confirmation process. Thus, the plan's attempt at "discharge by declaration" violated the creditor's right to due process. The confirmation order was void and was set aside under Rule 60(b)(4) as to the student loan creditor. *Ruehle*, 412 F.3d 679, 684 (6th Cir. 2005).

Due process also prevents a chapter 13 plan or confirmation of a chapter 13 plan from taking property from a third person and vesting it in the debtor. In other words, confirmation of a plan cannot revive the debtor's property interest that was extinguished before bankruptcy. *In re Toney*, 349 B.R. 516 (Bankr. E. D. Tenn. 2006); *Winters National Bank & Trust Co. v. Simpson (In re Simpson)*, 26 B.R. 351 (Bankr. S. D. Ohio 1982); *Jauregui v. Ricci (In re Jauregui)*, 197 B.R. 673 (Bankr. E. D. Calif. 1996).

The facts of this case clearly raise the question of whether the the plan is void as to Bryant Title because it was denied due process. A decision that the plan is void as to Bryant Title would mean that the plan is not binding on Bryant Title, and the ownership question can still be litigated. When a confirmed chapter 13 plan treats the debtor as having an interest in a particular item of property, confirmation may never be a final, binding decision against a party who subsequently contends it was the sole owner of the property and the debtor had no interest in it when the debtor filed bankruptcy.[2] That situation presents the court with a due process question. To decide the due process question, the court

---

[2] With some types of contracts, the question regularly comes up whether the other party is a secured creditor or has greater rights. As to the effect of confirmation, it is usually clear that the debtor had an interest in the property, an interest greater than mere possession, when he filed the the chapter 13 case. *See, e.g., HPSC, Inc. v. Wakefield (In re Wakefield)*, 217 B.R. 967 (Bankr. M. D. Ga. 1998) (true lease or security agreement); *In re Moore*, 290 B.R. 141 (Bankr. W. D. Mo. 2003) (mortgage or installment land sale contract).

9

will often need to decide the underlying question of the debtor's interest in the property at the time of filing the chapter 13 case. Even if the court does not need to decide the underlying question of who had what interest in the property, the court is likely to decide it as a matter of judicial efficiency. *In re Rupert*, No. 04-13828 (Bankr. E. D. Tenn. Apr. 17, 2006) (whether lease created security interest). That is certainly true with regard to Bryant Title's argument. If Bryant Title's first action in this case had been filing a motion or complaint or any pleading to challenge the effect of the confirmed plan, the court would have allowed it to litigate the question of whether the debtor had any interest in the car when he filed this chapter 13 case. Bryant Title's first step in this case, however, was not a challenge to the plan and confirmation. Instead, Bryant Title filed the proof of claim that clearly agrees with the plan's treatment of Bryant Title as a creditor with a lien on the car to secure a debt. Confirmation did not prevent Bryant Title from proving that the debtor had no interest in the car, but the proof of claim may have that effect.

Bryant Title has not denied that it received timely notice of debtor's case, including a copy of the proposed plan and the deadline for filing an objection. The plan was contrary to the basic elements of the pawn transaction. It boldly contradicted what Bryant Title must have expected as to the effect of the chapter 13 case. Bryant Title's first action in the debtor's chapter 13 case was filing the proof of claim that followed, accepted, or acquiesced in the plan's interpretation of the facts and the law regarding its rights in the car. The proof of claim was filed after the claims bar date, almost 13 weeks after confirmation and 19 weeks after notice of the plan was mailed. Bryant Title filed the motion to reconsider about 10 days after filing the proof of claim.

Bryant Title's decision to file this proof of claim could have been justified by a variety of reasons. There were problems under Georgia law with enforceability of the pawn contract. A bankruptcy court in Georgia has also held that a pawn transaction may be a fraudulent transfer to the pawnbroker. *Bell v. Instant Car Title Loans (In re Bell)*, 279 B.R. 890 (Bankr. N. D. Ga. 2002). The court should also point out that the pawn transaction took place while the debtor was in a previous chapter 13 case in this court. Confirmation of the plan in that case did not vest property of the bankruptcy estate in the debtor. Docket No. 19, *In re Kirk Douglas Jackson*, Bankr. Case No. 01-16216 (Bankr. E. D. Tenn. Nov. 28,

10

2001); 11 U.S.C. §§ 363, 364, 1303, 1305(c) & 1327(b). Furthermore, Bryant Title did not do anything before the deadline for filing claims expired. Legal problems such as these lead to practical, economic questions. Is it better to take what the plan provides or to litigate all the questions that may be raised by the debtor in response to an objection? Bryant Title had ample time before it filed the proof of claim to make a reasoned decision on the question of whether to accept the plan or litigate the question of the debtor's interest in the car. The trustee made one or more plan payments to Bryant Title after it filed the proof of claim and before it filed the motion to reconsider. This may or may not have spurred Bryant Title to file the motion to reconsider. The motion may have already been in preparation. In any event, the facts support the conclusion that Bryant Title filed the proof of claim because it made a reasoned decision to accept the plan. Bryant Title later changed course and decided to litigate the question of whether the debtor had any interest in the car. The question is whether this change of course came too late because the proof of claim prevents Bryant Title from arguing that the plan's treatment of the car is wrong.

Bryant Title might argue against that it should not be bound by the filed proof of claim because that result would also violate due process; the theory is that faulty procedure in the chapter 13 case pressured Bryant Title into filing the proof of claim. The argument has several steps: (1) Bryant Title believed the plan could not change its rights as proposed unless the debtor began a separate proceeding against Bryant Title for the purpose of proving that the plan's view of the pawn transaction was correct; (2) before confirmation of the plan the debtor did not begin a separate proceeding against Bryant Title; (3) nevertheless, the court confirmed the plan; (4) time passed, and the debtor still did not begin a separate proceeding against Bryant Title; (5) Bryant Title concluded that it was wrong about the procedure, and a challenge to the plan was probably no longer feasible; (6) as a result, Bryant Title filed the proof of claim that agreed with the plan's view of the pawn transaction.

This argument does not depend on a proposition that the plan should not have included the provision treating Bryant Title as a secured creditor. The debtor had reasonable arguments that the pawn transaction was not enforceable as a pawn. If the debtor wanted to rely on these arguments to treat Bryant Title as the holder of a secured claim, then the plan could include a provision treating Bryant Title

11

as a secured creditor. 11 U.S.C. § 1325(a)(5). In this respect, the *Ruehle* decision can be distinguished. The debtor in *Ruehle* may have had good arguments for partial discharge of the student loan debt, but the law and the rules did not justify a plan provision discharging part of the debt. The debtor's plan in this case set out a payment proposal for Bryant Title, as a plan is expected to do. The payment proposal was based on a disputed view of Bryant Title's interest in the car, and that raised the due process question of whether a separate proceeding was required to decide the ownership issues. The key facts in the present argument are confirmation of the plan and the debtor's failure, before and after confirmation, to commence a separate proceeding to determine the extent of his interest in the car.

The new concerns that Bryant Title faced after confirmation depended greatly on lack of legal knowledge. Confirmation *might* have added legal issues that *might* require more work by the lawyers. Drafting a motion or complaint *might* be more costly than drafting a response. The court *might* charge a filing fee. Confirmation *might* prevent a successful challenge to the plan so that any expenses related to a challenge would be wasted. Bryant Title needed legal advice on these issues just as it always needed legal advice if it wanted to challenge the plan. The facts after confirmation did not clearly indicate that challenging the plan or hiring a lawyer to decide whether to challenge the plan would be futile and a waste of money. The situation was essentially the same as before confirmation. Bryant Title either wanted to spend the money to challenge the plan or it did not. Bryant Title chose not to challenge the plan until long after confirmation and after filing the proof of claim.

The facts suggest the following scenario. First, Bryant Title did not want to spend the money to challenge the plan. Second, the plan provision was not too bad in purely economic terms, though Bryant Title may have had other reasons for not accepting the plan. Bryant Title was caught between these concerns and did nothing until it became worried that it had missed out entirely. Bryant Title then hired the lawyer who filed the proof of claim so that it could at least receive payment under the plan. The lawyer did more, however; he looked at the facts and relieved Bryant Title of its fears about challenging the plan after confirmation. As a result, Bryant Title finally challenged the plan by filing the motion to reconsider. If this scenario is not exactly accurate, it still illustrates the court's thinking. Bryant

12

Title's inaction pressured it to file the proof of claim, but Bryant Title's inaction was not caused or justified by the bankruptcy process. Bryant Title apparently had other reasons for not making an earlier decision to challenge the plan. In summary, the process of the chapter 13 case did not pressure Bryant Title into filing the proof of claim before challenging the plan. The result is that the proof of claim may prevent Bryant Title from challenging the plan.

As a general rule, a creditor or other claimant in a bankruptcy case can assert all the remedies it is still entitled to assert under non-bankruptcy law. *Svenska Taendsticks Fabrik Aktibolaget v. Irving Trust Co., (In re International Match Corp.)*, 69 F.2d 73 (2d Cir. 1934); *In re Makarewicz*, 121 B.R. 262 (Bankr. S. D. Fla. 1990). Likewise, filing a proof of claim or interest based on a particular remedy or a particular interest in property usually does not amount to an irrevocable election of that legal position to the exclusion of others that are still available under non-bankruptcy law. *In re Rose*, 39 F.2d 242 (S. D. Tex. 1929); *In re Rhine*, 241 F.Supp. 86 (D. Colo. 1965). On the other hand, a claimant's actions in a bankruptcy case may amount to election of a particular remedy or property interest for purposes of the bankruptcy case, or the claimant's actions may estop it from proving a different remedy or property interest in the bankruptcy case. *In re Lacy*, 115 B.R. 296 (D. Kan. 1990) (accepting abandonment as election to cancel land sale contract); *West Suburban Bank v. CCGK Investors (In re CCGK Investors)*, 145 B.R. 908 (N. D. Ill. 1992) (estoppel to assert tort claim by continuing pursuit of secured claim); *Malden Mills Industries, Inc. v. Maroun (In re Malden Mills Industries, Inc.)*, 303 B.R. 688 (1st Cir. B.A.P. 2004) (estoppel by continued failure to raise issue); *In re Boone*, 281 B.R. 51 (Bankr. S. D. Ala. 2001); *Weinberg v. Croshier (In re Croshier)*, 228 B.R. 468 (Bankr. S. D. Calif. 1998) (estoppel by proof of claim).

The facts of this case should be compared with two other cases. The first is *In re Mangano*, 253 B.R. 339 (Bankr. D. N. J. 2000). In that case the court confirmed a chapter 13 plan providing for cure and reinstatement of a mortgage. The mortgage holder had foreclosed and bought the property at foreclosure before bankruptcy but did not object to confirmation. It received two plan payments directly from the debtor but did not file a proof of claim. Its first action in the case was filing a motion for relief from the automatic stay on the ground that it was the owner of the property. The court concluded that the

13

mortgage holder was not estopped to assert ownership of the property.

The second case is *In re Thomas*, 87 B.R. 654 (Bankr. D. Colo. 1988). It also involved a mortgage holder that had bought the property at foreclosure before the debtors' bankruptcy. The debtors did not attempt to redeem the property before their right to redeem expired during the chapter 13 case. The chapter 13 plan also did not provide for redemption. The plan provided for cure and reinstatement of the mortgage. The mortgage holder did not object to confirmation. It filed a proof of claim with calculations that were done as if the mortgage was still in effect, and the foreclosure was not complete before the debtors' bankruptcy. The court stated the rule that confirmation cannot take away an owner's interest in the property and give it to the debtor. Nevertheless, the court concluded that the mortgage holder was bound by the plan. The mortgage holder had in effect accepted the debtor's offer in the plan to re-purchase on the same terms as the earlier mortgage.

A creditor's actions in a bankruptcy case can amount to an election of remedies, including a choice to accept and be bound by a chapter 13 plan. The court need not treat Bryant Title's failure to object to confirmation as acceptance of the plan. Its acceptance occurred when it filed the proof of claim. It is bound by the plan unless the acceptance can be undone.

Bryant Title is not entitled to relief from the confirmation order on the ground that enforcing it would violate Bryant Title's right to due process. Even if the due process problem would have made the plan void as to Bryant Title, the due process problem makes no difference now. When Bryant Title filed the proof of claim, it chose to accept the plan and forego its arguments against the plan and confirmation, and any prior lack of due process did not lead Bryant Title to make this choice. The court will enter an order denying the motion to reconsider.

# # #